<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————
                                        :
LUIS R. GONZALEZ,                       :
                                        :
            Plaintiff,                  :         Civil Action No. 18-13009 (FLW) (ZNQ)
                                        :
        v.                              :
                                        :               **OPINION**
BOROUGH OF RED BANK,                    :
DETECTIVE JAMES DEPONTE,                :
DETECTIVE PAUL PEREZ, CHIEF             :
OF POLICE DARREN MCCONNELL,             :
and JOHN DOES 1–10,                     :
                                        :
            Defendants.                 :
                                        :
———————————————————

<u>**WOLFSON, Chief Judge**</u>

Plaintiff Luis R. Gonzalez ("Plaintiff") alleges that defendants the Borough of Red Bank, Detective James DePonte, Detective Paul Perez, and Chief of Police Darren McConnell violated his civil rights under the United States and New Jersey Constitutions. Before the Court are motions for summary judgment filed, respectively, by Detective Paul Perez ("Det. Perez") and Chief of Police Darren McConnell and the Borough of Red Bank (collectively the "Municipal Defendants").[1]  For the reasons set forth below, Det. Perez's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.  Summary Judgment is **GRANTED** in favor of Det. Perez on Plaintiff's conspiracy claim (Count III), however, summary judgment is **DENIED** as to Plaintiff's claims of excessive force pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights

———————————————————

[1]         Detective James DePonte did not file a motion for summary judgment.

Act (Counts I and VI).   The Municipal Defendants' Motion for Summary Judgment is **GRANTED**; all claims against the Municipal Defendants are dismissed.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 10, 2017, Plaintiff was visiting a friend in Red Bank, New Jersey.  (Det. Perez Statement of Undisputed Material Facts ("Perez SOF") ¶ 11.)   Around the same time, Dets. DePonte and Perez were investigating a separate incident in Red Bank and observed Plaintiff sitting in a parked car on River Street.  (*Id.* ¶ 12.)   Det. DePonte testified that he believed that Plaintiff looked suspicious because the detective did not recognize Plaintiff's car, the area in which the car was parked is known for narcotic activity, the car was parked close to the apron of a driveway, and Plaintiff had been sitting in his car for a prolonged period of time.  (*Id.* ¶ 13.) Additionally, Plaintiff's car was not in front of a house, but was parked "so as to block the door of [a local dry cleaning business]."  (*Id.* ¶ 15.)   Det. DePonte drove by Plaintiff's car two or three times and each time, "Plaintiff looked away from [him], raising Det. DePonte's suspicion."  (*Id.* ¶¶ 15–16.)   Det. DePonte thereafter told Det. Perez that he was suspicious of Plaintiff's car, and "they decided to talk to Plaintiff to make sure there was nothing wrong."  (*Id.* ¶ 17.)

Dets. DePonte and Perez then parked directly behind Plaintiff's vehicle and approached him; Det. DePonte approached on the driver's side of the vehicle and Det. Perez approached on the passenger's side.  (*Id.* ¶¶ 18–19.)   Det. DePonte identified himself as a police officer and asked Plaintiff why he was parked at that particular place.  (*Id.* ¶ 20.)   Plaintiff replied that he was waiting for a friend, but he could not recall his friend's name and it took him "35 to 40 seconds" to remember the name of the friend he was visiting.  (*Id.* ¶ 21.)   According to Det. Perez, Plaintiff additionally "appeared confused as to the location of his friend's house," but Plaintiff maintains

that he "pointed toward his friend's house."  (Perez SOF ¶ 22; Pl.'s Supp. Statement of Disputed Material Facts in Opposition to Perez Mot. ("Pl.'s Supp. SOF in Opp. Perez Mot.") ¶ 3.)

While speaking with Plaintiff, Det. DePonte smelled burnt and raw marijuana coming from Plaintiff's vehicle.  (Perez SOF, ¶ 23.)  Nevertheless, when asked if he had anything illegal in the car, Plaintiff responded in the negative.  (*Id.* ¶ 24.)  At that point, Det. DePonte requested that Plaintiff turn the vehicle off and exit the vehicle.  (*Id.* ¶ 25; Pl.'s Supp. SOF in Opp. Perez Mot., ¶ 5.)

Here, the parties' versions of events begin to diverge.  Det. Perez states that Plaintiff did not comply with Det. DePonte's request that he exit the vehicle and simply "froze and stared straight ahead."  (Perez SOF ¶¶ 26–27.)  Det. DePonte then "began to fear for his safety because Plaintiff refused to comply with his instructions, his odd behavior in looking straight ahead, and his confusion during their prior interactions."  (*Id.* ¶ 28.)  Because Plaintiff had not exited the vehicle and still had his seatbelt on, Det. DePonte opened the vehicle's driver side door and "attempted to place Plaintiff in a compliance hold to remove him from the car."  (*Id.* ¶¶ 29–30.)  Det. DePonte asked Det. Perez to remove Plaintiff's seatbelt while Det. DePonte attempted to control Plaintiff's arms; Det. Perez claims that Plaintiff continued "to resist the efforts to remove him from the car by grabbing the steering wheel and using his legs to stabilize himself."  (*Id.* ¶ 33.)  At some point, Plaintiff apparently tried to reach for something in the center console.  (*Id.* ¶ 35.)  Eventually the detectives were able to remove Plaintiff from the car, but he "continued to resist by not putting his hands behind his back" despite the detectives' repeated requests that he stop resisting.  (*Id.* ¶¶ 38–40.)  According to the detectives, Det. Perez then sprayed Plaintiff with pepper spray.  (*Id.* ¶ 41.)  Det. Perez claims that once he placed Plaintiff in handcuffs, he noticed

for the first time that Plaintiff was bleeding from his face.  (*Id.* ¶ 43.)  Both detectives state that they do not know how Plaintiff sustained the injuries to his face.  (*Id.* ¶¶ 42–44.)

Plaintiff's version is vastly different.  Plaintiff claims that he turned off his car in compliance with Det. DePonte's order, but before he could exit the vehicle Dets. DePonte and Perez "grabbed [his] arms and were pulling him in different directions."  (Pl.'s Supp. SOF in Opp. Perez Mot., ¶ 7.)  During that struggle, Det. Perez struck Plaintiff "right on the forehead," above his eyebrow, and sprayed pepper spray in his face.  (Pl.'s Dep. Tr., at 44.)  Office DePonte eventually "pulled him out of the car."  (*Id.* ¶ 8.)

Plaintiff was placed under arrest and thereafter transported to Riverview Medical Center, where he received stitches for a head laceration and was diagnosed with a broken nose.  (Perez SOF ¶ 46; Pl.'s Supp. SOF in Opp. Perez Mot., ¶ 10.)  According to Plaintiff's medical records, he told medical staff that "an officer struck him in the face."  (Pl.'s Opp. to Perez Mot., Ex. B, at 1.)  Following his discharge from the hospital, Plaintiff was taken to the Red Bank Police Department headquarters for questioning, and later transported to Monmouth County Correctional Institute ("MCCI").  (Pl.'s Opp. to Perez Mot., Ex. H.)  While detained at MCCI, Plaintiff was given eye drops, but was not treated for any other injuries related to this incident.  (Perez SOF ¶ 46.)

Following Plaintiff's arrest, a search was conducted of his vehicle that revealed controlled dangerous substances and a folding knife in the center console.  (Perez SOF ¶ 47.)  Accordingly, Plaintiff was charged with possession of a controlled dangerous substance in violation of N.J. Stat. Ann. § 2C:35-10a(1), possession of more than 50 grams of marijuana in violation of N.J. Stat. Ann. § 2C:35-10a(3); possession of a weapon in violation of N.J. Stat. Ann. § 2C:39-4d, obstruction of the administration of law in violation of N.J. Stat. Ann. § 2C:29-1, preventing a

lawful arrest in violation of N.J. Stat. Ann. § 2C:29-2a(3)(A); possession of drug paraphernalia in violation of N.J. Stat. Ann. § 2C:36-2, and possession of a controlled dangerous substance with intent to distribute in violation of N.J. Stat. Ann. § 2C:35-5(B)(2).  (Perez SOF, ¶ 49.)  Plaintiff pleaded guilty to one count of possession with intent to distribute and was held in county jail until he was sentenced in January 2018.  (*Id.* ¶¶ 48, 51.)

On August 20, 2018, Plaintiff filed the instant Complaint, which asserts the following claims: (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983 against Detective Perez, (2) failure to intervene in violation of 42 U.S.C. § 1983 against Det. DePonte, (3) conspiracy to violate federal civil rights in violation of 42 U.S.C. § 1983 against Dets. Perez and DePonte, (4) *Monell* claims for unlawful custom or policy and failure to train in violation of 42 U.S.C. § 1983 against the Borough of Red Bank and Chief McConnell, and (5) a claim for violation of the New Jersey Civil Rights Act.  (*See* Compl.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead,

5

the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331.  On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder.  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III.   DISCUSSION

#### A. Det. Perez's Motion for Summary Judgment

Det. Perez argues summary judgment is appropriate on all claims brought against him because (1) he is entitled to qualified immunity on Plaintiff's excessive force claim, and (2) Plaintiff has failed to present sufficient evidence of a meeting of the minds to support his civil conspiracy claim.  For the following reasons, the Court will deny summary judgment on the excessive force claim and grant summary judgment on the conspiracy claim.

##### i. *Excessive Force*

In Count I of his Complaint, Plaintiff claims that Det. Perez "engaged in the use of force that was excessive and objectively unreasonable under the circumstances" by punching Plaintiff in the face while attempting to remove him from his vehicle.  (*See* Compl. ¶¶ 19–22.)  Det. Perez contends that he is entitled to summary judgment on this claim pursuant to the doctrine of qualified immunity because he acted objectively reasonable under the circumstances and was justified in using physical force to remove Plaintiff from his car and effectuate his arrest.  (Perez Br. in Supp., at 12.)  Plaintiff, however, maintains that there is a genuine issue of material fact as to whether Det. Perez's use of force was objectively reasonable, and therefore summary judgment is inappropriate.  (*See* Pl.'s' Br. in Opp. Perez Mot., at 5–8.)

Qualified immunity is "an entitlement not to stand trial or face the burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Under this doctrine, a government official is immune from claims for damages unless, interpreting the allegations in the light most favorable to plaintiff, they show (1) that the official violated the plaintiff's constitutional rights, and (2) that the constitutional right that was violated was clearly established. *Id.* at 201; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."). A right is considered clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

The Court's analysis thus begins with determining whether Det. Perez violated Plaintiff's constitutional rights.[2] Where excessive force is alleged, courts in this circuit determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test set forth in *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). *See Curley*, 499 F.3d at 206–07. To determine whether an officer acted with objective reasonableness, courts must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal citation omitted). This inquiry is individualized and highly fact-specific, but three factors must be considered: "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). Other factors

---

[2]     The parties do not dispute that Plaintiff was seized for the purposes of the Fourth Amendment and that force was used. Thus, the Court limits its analysis to whether that force was reasonable under the circumstances.

relevant to this inquiry include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Finally, objective reasonableness is evaluated "from the perspective of the officer at the time of the incident and not with the benefit of hindsight," and the court must employ a "totality of the circumstances" approach. *Santini*, 795 F.3d at 417.

The Court is presented with conflicting accounts of Plaintiff's arrest that raise genuine disputes of material fact as to whether Det. Perez's use of force was objectively reasonable. From the outset, there is a genuine dispute as to how Plaintiff was injured in the first place. While Det. Perez admits to using pepper spray once Plaintiff was removed from the vehicle, he maintains that he has no knowledge as to how Plaintiff's face was injured and explains that he did not know Plaintiff was bleeding until after Plaintiff was removed from the vehicle. (Perez SOF, ¶¶ 43–44.) Plaintiff, however, claims that Det. Perez struck him in the face while attempting to remove him from the vehicle. (Pl.'s Supp. SOF Opp. Perez Mot., ¶ 8.) Defendants have not presented any testimony that would undermine the reliability of Plaintiff's account of the incident, nor have they presented any record evidence that would refute Plaintiff's testimony that Det. Perez struck him in the face. *See Verdier v. Borough*, 796 F. Supp. 2d 606, 626–27 (E.D. Pa. 2011) (denying summary judgment where plaintiff and defendant's accounts of forceful removal from car differed). Indeed, Plaintiff's injuries, a broken nose and lacerations which required stitches, are consistent with his allegation that he was hit in the face. Resolution of this question of fact is critical to determining whether Det. Perez's conduct was objectively reasonable.

In that connection, viewing the evidence presented in the light most favorable to Plaintiff, there is sufficient evidence from which a trier of fact could reasonably conclude that Det. Perez's use of force was excessive.  Looking to the first *Graham* factor, the suspected crime at the time of the arrest—possession of marijuana—was not particularly severe.  *Cf. Niblack v. Murray*, No. 12-6910, 2016 WL 4086775, at *3 (D.N.J. July 29, 2016) (finding that suspected possession of heroin was not "particularly severe" crime in context of *Graham* analysis).[3]  Thus, this factor weighs in Plaintiff's favor

As to the second *Graham* factor, whether Plaintiff posed an imminent threat to the safety of the officers or attempted to resist arrest, Det. Perez relies on Det. DePonte's testimony that he feared for his safety because Plaintiff "refused to comply with his instructions, his odd behavior of looking straight ahead, and his confusion during their prior interactions."  (Perez SOF, ¶ 28.)  Det. Perez also argues that additional concerns for the detectives' safety were raised when Plaintiff appeared to reach into the center console  (*Id.* ¶¶ 35–36.)[4]  Plaintiff, however, maintains that he did attempt to comply with Det. DePonte's commands, but he was not given the opportunity.  (*See* Pl.'s Supp. SOF Opp. Perez Mot., ¶¶ 26–30.)  Plaintiff alleges that he did, in fact, attempt to comply with the detective's command to exit his vehicle by turning off his car.  And, indeed, prior to that command, there is no indication that Plaintiff was not compliant with the detectives.  (*See* Perez SOF, ¶¶ 20–23.)  Moreover, there is no indication in the record that the detectives suspected

---

[3]     While Plaintiff was ultimately charged with other offenses following his arrest, the Court considers the circumstances known to the officer at the time of the incident.  When Det. DePonte ordered Plaintiff to turn off his vehicle, the record is clear that Plaintiff was only suspected of possessing marijuana.

[4]     The search of Plaintiff's vehicle following his arrest revealed a folding knife in the center console.  It does not appear, however, that Dets. Perez and DePonte had any suspicion that Plaintiff had a weapon when they removed him from the vehicle, other than their generalized concern.

Plaintiff to be armed or otherwise violent.  (*See* Perez SOF, ¶¶ 29–39.)  Under these circumstances, a reasonable factfinder could find that Plaintiff did not pose an imminent threat to the detective's safety.  Indeed, the evidence relied on by Det. Perez suggests they had only generalized concerns for their safety.  Accordingly, the second *Graham* factors weighs in Plaintiff's favor.

The facts surrounding whether Plaintiff resisted arrest are similarly disputed.  According to Det. Perez, Plaintiff refused to exit his vehicle,[5] "resisted the attempts to place him in a compliance hold, and resisted the attempts to remove him from the vehicle."  (Perez Br., at 12.)  Plaintiff, on the other hand, maintains that he was not given the opportunity to exit his vehicle voluntarily and that he in no way resisted the requests of Det. DePonte.  (Pl.'s Supp. SOF Opp. Perez Mot., ¶¶ 26–30.)  Indeed, Plaintiff states that Det. Perez and Det. DePonte "pulled [his] arms in different directions before he could get out of the car."  (*Id.*)  The Court, on a summary judgment motion, cannot determine whose version of the facts is more credible or resolve these factual disputes as to whether Plaintiff resisted arrest or otherwise failed to comply with Det. DePonte's commands.  *See Green v. N.J. State Police*, 246 F. App'x 158, 161–62 (3d Cir. 2007) (affirming district court's denial of summary judgment where testimony regarding officer's removal of plaintiff from his vehicle conflicted).  Therefore, viewing the facts in the light most favorable to Plaintiff, the Court finds that the third *Graham* factor also weighs in Plaintiff's favor.

Accordingly, on balance, the Court finds that a reasonable factfinder could accept Plaintiff's version of the facts to find Det. Perez used excessive force in striking Plaintiff in the

---

[5]  I note that Det. Perez states that it is "undisputed" that Plaintiff refused to exit his vehicle when instructed.  (*See* Perez Br. in Supp., at 12.)  That assertion, however, is belied by the record which, as discussed above, reflects that Plaintiff claims that he was never given the opportunity to comply with Det. DePonte's command to exit the vehicle.  (*See* Pl.'s Dep., at 38:3–40:15 ("By the time I shut the car off, I turned, and I was startled that Mr. Perez was in my car.  I didn't even know he was in my car."); *see also* Pl.'s Supp. SOF Opp. Perez Mot. ¶ 6 ("Plaintiff shut his car off as ordered and was seatbelted, but he never got a chance to get out of the vehicle.").)

face during the attempt to remove Plaintiff from the vehicle. Because a reasonable factfinder could find that Det. Perez's use of force was not "objectively reasonable" under these circumstances, Det. Perez has not satisfied the first step of the qualified immunity analysis, at this stage.

Because the Court has determined that a reasonable jury could find that a constitutional violation occurred, I must consider whether Plaintiff's rights were "clearly established" at the time. *See Green*, 246 F. App'x at 162. The Third Circuit recently reiterated that "[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *James v. N.J. State Police*, ___ F.3d ___, 2020 WL 1922370, at *3 (3d Cir. Apr. 21, 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Put differently, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. A case directly on point is not required to show a right is clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). "[C]learly established rights are derived from either binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *James*, 2020 WL 1922370, at *4 (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)). The Third Circuit has explained that:

> In the context of excessive force claims, [the Third Circuit has] relied on the factors set forth in *Graham* and *Sharrar* in evaluating whether an officer made a reasonable mistake. We have stated that these factors "are well-recognized" and that when an officer applies

> them in "an unreasonable manner, he is not entitled to qualified immunity."

*Green*, 246 F. App'x at 162 (citations omitted).

Det. Perez appears to argue that his conduct did not violate any clearly established right because "police are permitted to use reasonable force to effectuate a lawful arrest." (Perez Br., at 12.) However, as the Court as explained, there are material questions of fact surrounding whether Det. Perez's conduct was reasonable under the circumstances. Resolution of these questions is critical to any determination of qualified immunity. Thus, because of the disputed facts regarding whether the use of force was reasonable, the Court will not grant summary judgment on the excessive force claim pursuant to the doctrine of qualified immunity. *See, e.g.*, *Verdier*, 796 F. Supp. 2d at 629 ("Given the unresolved questions of fact as to claims of excessive use of force . . . , it would be premature for the Court to determine whether a reasonable officer would believe he was following clearly established law under the circumstances.").[6]

### i. § 1983 Conspiracy

Det. Perez argues that summary judgment is should be granted on Plaintiff's civil conspiracy claim because (1) Plaintiff has not alleged any violation of his constitutional rights, and (2) there is no evidence to suggest that Dets. Perez and DePonte agreed to use excessive force against Plaintiff.

To state a claim for civil conspiracy under § 1983, a plaintiff "must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive

---

[6]     The Court's qualified immunity analysis applies equally to Plaintiff's NJCRA claim against Det. Perez. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983."). Thus, summary judgment is denied on Plaintiff's NJCRA claim against Det. Perez for the same reasons.

plaintiff of a federally protected right." *Adams v. Atlantic City*, 294 F. Supp. 3d 283, 299 (D.N.J. 2018) (quoting *Epifan v. Roman*, No. 11-2591, 2014 WL 4828606, at *5 (D.N.J. Sept. 29, 2014)). A plaintiff bringing a § 1983 claim for civil rights conspiracy must show an understanding or "meeting of the minds" with facts demonstrating agreement and concerted action. *See Startzell v. City of Phil.*, 533 F.3d 183, 205 (3d Cir. 2008). Where there is a lack of direct evidence, an agreement or meeting of the minds may be shown by circumstantial evidence, such as by identifying interactions between the conspirators, the approximate timing of the agreement, the parties in agreement, and the object of the conspiracy. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018).

In his conspiracy claim, Plaintiff alleges that Dets. Perez and DePonte conspired to violate his Fourth Amendment right to be free from excessive force. (*See* Compl. ¶ 27.) In support of this claim, Plaintiff points to the following facts as evidence of a "meeting of the minds" between the defendants: "After Plaintiff was punched in the face and pepper sprayed, Defendants filed false reports and gave subsequent false deposition testimony that they had no idea how Plaintiff sustained [his injuries]." (Pl.'s Perez Opp. Br., at 9.) Plaintiff, however, lacks evidence that Dets. Perez and DePonte entered into an agreement prior to allegedly violating his constitutional rights. While it is axiomatic that a meeting of the minds may be inferred from circumstantial evidence, *see Jutrowski*, 904 F.3d at 295 (noting that "in the absence of direct proof, that 'meeting of the minds' or 'understanding or agreement to conspire' can be 'infer[red]' from circumstantial evidence" (alteration in original)), the alleged evidence of a cover-up, which occurred after the arrested, is too attenuated for the Court to infer that Dets. Perez and DePonte entered into a conspiracy to violate Plaintiff's constitutional rights prior to his arrest. *See Murphy v. Middlesex Cty.*, 361 F. Supp. 3d 376, 389 (D.N.J. 2019). At best, the evidence suggests a potential cover-up.

14

But, to the extent Plaintiff's claim may be premised on the alleged falsification of police reports, his claim still fails. "[C]oncealing a constitutional violation, including [a Fourth Amendment violation], does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts." *Howard v. Reyes*, Civ. No. 18-800, 2019 WL 2560103, at *5 (D.N.J. June 21, 2019) (alteration in original) (quoting *Jutrowski*, 904 F.3d at 294-95); *see also Swiggett v. Upper Merion Twp.*, No. 08-2604, 2008 WL 4916039, at *4 (E.D. Pa. Nov. 17, 2008) ("[C]ourts have found that concealing a constitutional violation, including use of excessive force, does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts."); *Gravely v. Speranza*, 408 F. Supp. 2d 185, 191 (D.N.J. 2006); *Green v. N.J. State Police*, No. 04–0007, 2006 WL 2289528, *4 (D.N.J. Aug. 9, 2006) ("Because Green has failed to establish any constitutional injury resulting from the alleged conspiracy to cover-up the excessive use of force, summary judgment for Defendants is warranted."). Here, Plaintiff does not separately claim that he was denied access to the courts or that his constitutional rights were otherwise violated as a result of the detectives' alleged falsification of the police reports. Accordingly, summary judgment will be granted on Plaintiff's conspiracy claim.

## B. The Municipal Defendants' Motion for Summary Judgment

Plaintiff brings *Monell* claims against the Borough of Red Bank and Chief McConnell for failure to train, supervise, and discipline Dets. Perez and DePonte.[7] The Municipal Defendants argue that they are entitled to summary judgment because "there is no evidence that would establish a causal link between any policy or custom [of the Borough of Red Bank] and any alleged

---

[7]  While alleged in separate counts of the Complaint, Plaintiff's claims against the Borough and Chief McConnell rest on the same theory of liability. Accordingly, because the parties group both claims together in their briefing, the Court considers both claims as one.

violation of plaintiff's federal rights." (Municipal Defs.' Br. in Supp., at 8.) Plaintiff however maintains that he has "presented sufficient evidence that [the Municipal Defendants] are aware of, acquiesce in and tacitly approve of a custom tolerating the use of excessive force by officers." (Pl.'s Br. in Opp. Municipal Defs.' Mot., at 8.)

It is well-established that a municipality may only be held liable under § 1983 if its official policy or custom causes a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). Indeed, a governmental entity may not be held liable under § 1983 for constitutional violations caused solely by its employees under the principle of *respondeat superior*. *Id.* at 691; *see also McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (explaining that in *Monell* "the Supreme Court established that a municipality cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*"). To recover against a municipality, a plaintiff "must demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiff's constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort.'" *Hansell v. City of Atlantic City*, 152 F. Supp. 2d 589, 609 (D.N.J. 2001). The Third Circuit has explained that

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*McTiernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (alterations in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Further, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." *McTiernan*, 564 F.3d at 636.

Here, Plaintiff first brings a custom or policy *Monell* claim, alleging that the Municipal Defendants "are aware of, acquiesce in and tacitly approve of a custom of tolerating the use of excessive force by officers." (Pl.'s Opp. Br. to Municipal Defs.' Mot., at 8.) Plaintiff points to two civil lawsuits that have been filed against Dets. Perez and DePonte for alleged violations of constitutional rights as evidence of knowledge of a prior pattern of misconduct. (*See* Compl. ¶¶ 43–46.; Pl.'s Supp. Statement of Disputed Material Facts in Opp. Municipal Defs.' Mot. ("Pl.'s Municipal Def. SOF"), ¶¶ 5–7.) The two lawsuits cited by Plaintiff involve civil rights complaints filed in this District. The first, *Kernahan v. Borough of Red Bank*, Civ. No. 12-6984, was filed against Det. Perez and the Borough in 2012; the complaint alleges that Det. Perez used excessive force on the plaintiff and that the Borough was liable to the plaintiff for failure to train and for maintaining unconstitutional policies. (Pl.'s Municipal Def. SOF, ¶¶ 5–6.) The second, *Rainey v. DePonte*, Civ. No. 16-1072, was filed against Dets. DePonte and Perez in 2016 and alleged that the detectives fabricated evidence. (*Id.* ¶¶ 5, 7.) Plaintiff maintains that the civil complaints demonstrate that the Municipal Defendants had knowledge of a pattern of misconduct of Dets. Perez and DePonte and, further, that the Municipal Defendants "are aware of, acquiesce in and tacitly approve of a custom tolerating the use of excessive force by officers." (Pl.'s Br. in Opp. Municipal Defs.' Mot., at 6, 8.) In response, the Municipal Defendants argue that the two civil complaints do not constitute competent evidence of knowledge as Plaintiff has not established whether the claims raised in those actions were meritorious, "let alone that the underlying incidents were similar and/or that the Borough or Chief McConnell reacted in a manner conveying approval." (Municipal Defs.' Br. in Supp., at 7–8.)

"A custom of failing to investigate citizen complaints may provide a basis for municipal liability if 'a policy-maker (1) had notice that a constitutional violation was likely to occur, and

(2) acted with deliberate indifference to the risk.'" *Merman v. City of Camden*, 824 F. Supp. 2d 581, 589 (D.N.J. 2010) (quoting *Brice v. City of York*, 528 F. Supp. 2d 504, 518 (M.D. Pa. 2007)). In *Beck v. City of Pittsburgh*, 89 F.3d 966, 976 (3d Cir. 1996), the Third Circuit held that internal civilian complaints filed with a police department could support an inference that a municipality "knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." *Beck* arose from a police officer's use of excessive force against the plaintiff. *Id.* at 967. In support of his *Monell* claim against the municipality, the plaintiff in *Beck* had presented internal affairs complaints that had been made against the defendant officer, both before and after the incident at issue, on which "a reasonable jury could have inferred that the Chief of Police knew, or should have known, of [the officer's] propensity for violence when making arrests." *Id.* at 973–74. The *Beck* plaintiff further offered evidence that demonstrated that the municipality's investigatory system for complaints was insufficient as it reviewed the complaints in a vacuum and did not alert policymakers to patterns of unconstitutional conduct or otherwise attempt to remedy constitutional violations after they had occurred. *See id.* at 974–75. This, the Third Circuit determined, was "sufficient evidence from which a reasonable jury could have inferred that the [municipality] knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." *Id.* at 976.

The Third Circuit has not, however, considered whether civil lawsuits alleging constitutional violations can similarly support such an inference. Other courts that have considered this question have determined that "a plaintiff's citation to a few lawsuits involving claims of alleged [constitutional violations] is not probative of the existence of an underlying policy by a municipality." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 543 (S.D.N.Y. 2015) (alteration in original) (quoting *Ameduri v. Village of Frankfort*, 10 F. Supp. 3d 320, 341

(N.D.N.Y. 2014)); *see also Lawson v. City of Philadelphia*, No. 17-4228, 2020 WL 93941, at *4 n.3 (E.D. Pa. Jan. 8, 2020) (finding that "[t]he evidence of the two prior excessive force lawsuits against [the defendant] do[] not support plaintiff's *Monell* claim); *Pharaoh v. Dewees*, No. 14-3316, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016) (finding that evidence of other excessive force lawsuits filed against the defendant officers did not support plaintiff's *Monell* claim). As the Seventh Circuit has explained, the filing of a complaint, without more information, "indicates nothing" as "[p]eople may file a complaint for many reasons, or for no reason at all." *Strauss v. City of Chicago*, 760 F.3d 765, 769 (7th Cir. 1985); *see also Amann v. Prince George's Cty.*, No. 99-3759, 2001 WL 706031, at *2 (D. Md. June 1, 2001) (observing that a complaint filed in a civil lawsuit constitutes nothing more than "mere allegations rather than notice of actual unconstitutional behavior"). Indeed,

> the mere fact that a number of lawsuits have been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the municipality ignored such complaints such that it constituted deliberate indifference to any potential problem of excessive force, does not assist a fact-finder in determining whether the [municipality] actually has a historical problem of its police officers using unconstitutionally excessive force in the performance of their duties.

*Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 346 (E.D.N.Y. 2006). Put differently, evidence of other lawsuits filed against a municipality may only be relevant to a *Monell* claim where coupled with additional evidence that the municipality's "efforts to evaluate the claims 'were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim.'" *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 378 (S.D. Miss. 1999) (quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)); *see also Pharoah*, 2016 WL 2593842, at *5 ("To impose liability on a municipality more information about such lawsuits is required, such as whether they resulted in a finding that a constitutional violation occurred and whether the municipality's

response to the suits could demonstrate deliberate indifference to the risk of future constitutional violations.").

Here, Plaintiff has presented two civil complaints that generally involve alleged excessive force and fabrication of evidence. These Complaints, standing alone, do not demonstrate that the Municipal Defendants had knowledge of a prior pattern of similar incidents committed by Dets. Perez and DePonte. In the first instance, while Plaintiff alleges that these lawsuits are similar because they generally involve excessive force and fabrication of evidence, review of the Complaints fails to reveal any real similarities to the case at hand. For example, the *Kernahan* complaint alleges that three officers, including Det. Perez, entered the plaintiff's home without permission or probable cause, assaulted her, and wrongfully arrested her. (*See* Pl.'s Opp. to Municipal Defs.' Mot., Ex. C, at 21–28.) Notably, the Complaint does not indicate the extent to which Det. Perez was involved in this incident, as the allegations are made generally against all three officer defendants. (*See id.*) The *Rainey* complaint is even less comparable to the case at hand. In that complaint, the plaintiff alleges that, in December 2014, Dets. Perez and DePonte "fabricated physical evidence during the course of a search warrant." (Pl.'s Opp. to Municipal Defs.' Mot., Ex. C, at 29–35.) Critically, while not discussed by the parties, the Court finds it relevant to take judicial notice of the outcomes of these lawsuits. *Kernahan* was *sua sponte* dismissed for failure to prosecute. *See Kernahan v. Borough of Red Bank*, No. 12-6984, ECF Nos. 11, 12 (D.N.J.). *Rainey* was dismissed for lack of prosecution prior to service of the complaint. *Rainey v. DePonte*, No. 16-1072, ECF No. 6 (D.N.J. Mar. 30, 2017).

These lawsuits, which were never adjudicated on the merits, cannot be said to have put the Municipal Defendants on notice of prior alleged misconduct committed by Dets. Perez and DePonte. Rather, Plaintiff has merely presented two isolated incidents of potential misconduct

committed by Dets. Perez and DePonte over a five-year period—that is insufficient to create a genuine issue of material fact as to whether Plaintiff's injuries were proximately caused by a policy, custom, or practice of the Municipal Defendants. *See Holliday v. City of Elizabeth*, No. 13-1006, 2018 WL 953346, *13 (D.N.J. Feb. 20, 2018) ("Critically, no court has found that two complaints over a two-year period present sufficient evidence of a potential pattern of improper conduct to result in potential liability to either a department or its supervising officers."); *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 302 (D.N.J. 2012) (observing that "that two isolated or sporadic incidents are not sufficient to establish a custom or policy in a 1983 action").

Moreover, even if the Court were to accept the lawsuits as evidence that the Municipal Defendants were on notice of a pattern of misconduct, Plaintiff fails to demonstrate that they reacted to the lawsuits in a way that evidences "deliberate indifference to the risk of future constitutional violations." *Pharoah*, 2016 WL 2593842, at *5. Indeed, the mere fact that complaints have been made against an officer cannot "alone justify a jury's finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." *Merman*, 824 F. Supp. 2d at 591 (D.N.J. 2010). In that connection, a plaintiff cannot simply rely on the fact that a number of complaints or lawsuits was filed, but he or she "must show why those prior incidents deserved discipline and how the misconduct in those situations was similar to the present one." *Id.* Plaintiff has not made such a showing here. Specifically, Plaintiff fails to demonstrate why these two incidents should have been investigated, nor does he make any effort to demonstrate how the incidents are similar in nature to the incident that occurred here.[8]

---

[8]      Instead, Plaintiff merely suggests that the New Jersey Attorney General's Guidelines for Internal Affairs Policy and Procedure ("Attorney General's Guidelines") require that the Municipal Defendants investigate every civil litigation filed against an officer as part of an "Early Warning" system. The Municipal Defendants respond that not only does Plaintiff conflate a civil lawsuit with an internal affairs complaint, he also misrepresents the requirements of the Attorney

Accordingly, there are no grounds on which a jury could infer that the Municipal Defendants knew of a pattern of prior similar incidents committed by Dets. Perez and DePonte or that they acted with deliberate indifference to the risk that the detectives would engage in such misconduct in the future. Summary judgment in favor of the Municipal Defendants, is therefore, appropriate on this theory of *Monell* liability.

Finally, to the extent Plaintiff brings a *Monell* claim against the Municipal Defendants for failure to train or discipline, his claim is similarly dismissed. A municipality may also be liable under *Monell* where it failed to adequately train an employee and "that failure amounts to deliberate indifference to the rights of persons with whom they come into contact." *Ivan v. Cty. of Middlesex*, 595 F. Supp. 2d 425, 481 (D.N.J. 2009) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). As such, a municipality is only liable for deficient training or discipline if "plaintiff can show 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" *Id.*

---

General's Guidelines. The Court agrees; Plaintiff's argument is based on an incorrect interpretation of the Attorney General's Guidelines. Indeed, the Guidelines pointedly distinguish between civilian internal affairs complaints and civil litigation filed in a court. While the Guidelines require that any civilian internal affairs complaint that contains sufficient factual information be investigated, they further state that "[w]here civil litigation has been filed and the complainant is a party to or a principal witness in the litigation, the internal affairs investigator shall consult with legal counsel to determine whether an investigation is appropriate or warranted." (Bonello Reply Decl., Ex. A, at 15.) Moreover, while Plaintiff argues that the Borough is required to have an Early Warning system in place that tracks complaints, including civil litigation, made against officers for constitutional violations, it is clear from the Guidelines that this is a recommendation, not a requirement. (*See id*. at 46–47 (noting that "[l]aw enforcement agencies may also wish to consider implementing a specific mechanism to track employee behavior," most commonly known as an "early warning system"). Simply put, there is nothing in the Guidelines that would have *required* the Municipal Defendants to investigate the two civil lawsuits at issue here. Plaintiff offers no other evidence to support his theory that the Municipal Defendants' apparent failure to investigate these lawsuits constitutes deliberate indifference.

(quoting *City of Canton*, 489 U.S. at 388).  In support of this theory of liability, Plaintiff again relies on the previous lawsuits filed against Dets. Perez and DePonte as evidence of a prior pattern of similar incidents.  As the Court explained above, these complaints on their own are insufficient to demonstrate a pattern of misconduct committed by Dets. Perez and DePonte.  Moreover, Plaintiff offers no other factual support for this claim except his own conclusory statements that the Municipal Defendants inadequately train their officers on the use of force.  (*See* Pl.'s Br. in Opp. Municipal Defs.' Mot., at 10.)  This is insufficient to survive summary judgment.  *See Waris v. Frick*, 304 F. App'x 975, 977 (3d Cir. 2008) (affirming grant of summary judgment where plaintiff only made "conclusory accusations of misconduct by [defendants]" without supporting evidence).  Accordingly, the Municipal Defendants' motion is also granted with respect to Plaintiff's failure to train claim.

## IV.   CONCLUSION

For the foregoing reasons, Det. Perez's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.  Summary Judgment is **GRANTED** in favor of Det. Perez on Plaintiff's conspiracy claim (Count III), and **DENIED** as to Plaintiff's claims of excessive force pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (Counts I and VI).  The Municipal Defendants' Motion for Summary Judgment is **GRANTED**; all claims against the Municipal Defendants are dismissed.

Dated: April 28, 2020                               /s/ Freda L. Wolfson
                                                    Freda L. Wolfson
                                                    Chief U.S. District Judge

23